S06F0326, S06X0438. PATE v. PATE; and vice versa.

(631 SE2d 103)

MELTON, Justice.

This appeal and cross-appeal arise out of a dispute over child support. Donald W. Pate ("Husband") and Jane Dykes Pate ("Wife") were divorced in 1988. The final divorce decree incorporated a settlement agreement negotiated by the parties while Husband was enrolled in medical school. The agreement provided, inter alia, that upon completion of medical school, Husband would pay Wife child support for the couple's two children equal to "twenty-five (25) percent of [Husband's] gross income each month until the youngest child reaches age 21." Husband was additionally required to "furnish [Wife] a copy of his W-2 form each year by April 1." Following completion of his medical education and residency, Husband remarried and established a surgical practice in Sparta, Tennessee. Correspondingly, Husband formed a Tennessee professional corporation and later assigned to the corporation all sums received by him for rendering medical services. The corporation paid salaries to Husband and his new wife and annually reported the salary payments on Forms W-2, Wage and Tax Statement. Husband, in turn, calculated his child support obligations based upon the wages reflected on his Forms W-2, rather than the gross income assigned to the corporation.

In 2002, Wife brought a contempt action alleging that Husband willfully violated the terms of the divorce decree, and the trial court agreed, finding that the parties intended for the term "gross income" to constitute 25 percent of Husband's gross earnings, less reasonable expenses, and awarding Wife child support arrearages of $314,944.25. We granted Husband's application for discretionary appeal to consider whether the trial court erred in ascertaining Husband's child support obligations and finding him in willful contempt. Finding no error, we affirm. We also affirm the trial court's ruling on the amount of child support owed, the subject of Wife's cross-appeal.

1. It is well-established that the usual rules of contract construction should be employed when determining the meaning and effect of a divorce settlement agreement. *Fields v. Armistead,* 262 Ga. 439 (420 SE2d 753) (1992); *Brown v. Farkas,* 195 Ga. 653 (25 SE2d 411) (1943). The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement. If that

intention is lawful and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical and arbitrary rules of construction. OCGA § 13-2-3; *Knott v. Knott*, 277 Ga. 380 (2) (589 SE2d 99) (2003). Where a contractual term is ambiguous, however, the contract must be construed against the party undertaking the contractual obligations. OCGA § 13-2-2 (5); *Franklin v. Franklin*, 262 Ga. 218 (1) (416 SE2d 503) (1992).

Although the settlement agreement required Husband to supply Wife with a copy of his annual W-2 form, the agreement did not limit Husband's "gross income" to his Form W-2 wages. The trial court therefore found ambiguous the term "gross income" and construed the settlement agreement against Husband, the obligor. Specifically, the court determined that the parties intended for Husband's child support to be based upon Georgia's Child Support Guidelines, which provide, in pertinent part, that gross income shall include "100 percent of wage and salary income and other compensation for personal services" and shall be reduced by "[a]llowable expenses. . . ." OCGA § 19-6-15 (b) (2)-(4). Under this rubric, Husband's "gross income" significantly exceeded his Form W-2 wages, thereby creating a child support deficiency.

We agree with the trial court's construction of the contract, especially in view of Husband's admission that "both parties knew [Husband's] obligation for child support would be based on the Child Support Guidelines, OCGA § 19-6-15." Further, we cannot accept that it was within Wife's comprehension, at the time of the agreement, that Husband would use a subsequently-created professional corporation as a conduit to reduce his gross income subject to child support. Such a finding would create the unacceptable result that, as the corporation's sole director and manager, Husband could arbitrarily set his child support obligations, irrespective of the gross income received for his personal services.

2. Husband also contends that the trial court's decision is violative of *Acree v. McMahan*, 276 Ga. 880 (585 SE2d 873) (2003), where we declined to recognize reverse veil piercing as a new theory of liability. Specifically, Husband argues that by utilizing the corporation's income to calculate his child support obligations, the trial court reverse pierced the corporate veil. Because *Acree* has no application to this matter, we disagree. Where the trial court merely determined that Husband's "gross income" under the settlement agreement encapsulated all of his gross income, whether subsequently assigned to a professional corporation or not, and did not order the sequestration of the corporate assets or otherwise target those assets as the means to discharge Husband's child support obligations, it simply did not resort to reverse piercing, which is unnecessary to deal with this situation. We note that Georgia law makes it possible for the income

assigned to the professional corporation to be called upon to satisfy the child support deficiency without departing from this Court's precedent. In 1997, the Legislature enacted OCGA § 19-6-35 to comply with federal requirements that states adopt measures enabling child support recipients to void those transactions whereby child support obligors circumvent their child support obligations. Specifically, the law regards a child support obligee as a creditor under Georgia law, "for the purposes of attacking as fraudulent a judgment, conveyance, transaction, or other arrangement interfering with the creditor's rights, either in law or equity." OCGA § 19-6-35 (b). In *Acree*, we rejected reverse piercing, in part, because "traditional theories of conversion, fraudulent conveyance of assets, respondeat superior, and agency law are adequate to deal with [such] situations. . . ." Id. at 883. Since alternative legal remedies exist for Wife to ask a court to disregard Husband's interest in the corporation, the trial court's decision does not, as Husband suggests, inescapably reverse pierce the corporate veil.

3. We refuse to disturb the trial court's finding that Husband was in willful contempt for failing to comply with his child support obligations. The essence of civil contempt involved in a proceeding to enforce child support is willful disobedience of a prior court order. *Crowder v. Crowder*, 236 Ga. 612 (225 SE2d 16) (1976). If there is any evidence in the record to support the trial judge's determination that a party has willfully disobeyed a trial court's order, the decision of the trial court will be affirmed on appeal. Id. The trial court was authorized to conclude that Husband willfully violated the conditions of the settlement agreement when he substantially understated his gross income for the years 1997 to 2002. See *Simpkins v. Simpkins*, 278 Ga. 523 (1) (603 SE2d 275) (2004).

4. In her cross-appeal, Wife argues that the trial court should not have allowed particular business expenses claimed by Husband in calculating gross income to ascertain the child support arrearage. The record shows that the factual determination of the amount of gross income involved conflicting evidence. A trial court in a contempt action acts as the trier of fact, and is vested with broad discretionary power when the evidence is conflicting. *Yancey v. Mills*, 210 Ga. 684 (1) (82 SE2d 505) (1954). Husband showed the legitimacy of the excepted to expenses, and Wife produced no clear evidence demonstrating a contrary finding. Accordingly, we find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 17, 2006 —
RECONSIDERATION DENIED JULY 14, 2006.

*Weissmann & Zucker, William M. Moore, Bondurant, Mixson & Elmore, Benjamin E. Fox*, for appellant.
*Horace G. Joiner, Jr.*, for appellee.